**Maurice KUNSTENAAR, Plaintiff–Appellant,**

v.

**CONNECTICUT GENERAL LIFE IN-SURANCE CO., Texas Eastern Transmission Corp., and Halcon S.D. Group, Inc., Defendants–Appellees.**

No. 648, Docket 89–7879.

United States Court of Appeals, Second Circuit.

Argued Jan. 10, 1990.

Decided April 25, 1990.

William G. O'Donnell, Jr., New York City (O'Donnell, Fox & Gartner, of counsel), for plaintiff-appellant.

Bernard W. McCarthy, New York City (Chadbourne & Parke, of counsel), for defendants-appellees Texas Eastern Transmission Corp. and Halcon S.D. Group, Inc.

Kevin J. Brennan, New York City (Dwyer & Brennan, of counsel), for defendant-appellee Connecticut General Life Ins. Co.

Before VAN GRAAFEILAND, CARDAMONE and ALTIMARI, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

Maurice Kunstenaar appeals from an order of the United States District Court for the Southern District of New York (Keenan, J.) denying his motion to vacate and amend a summary judgment dismissing his amended complaint. We affirm.

From June 1978 to August 23, 1985, Kunstenaar worked as Director of Latin American Sales for Halcon S.D. Group, Inc. In 1982, Texas Eastern Transmission Corporation purchased Halcon and offered pension benefits to Halcon employees. The benefits included a Long Term Disability Plan, which fell within the definition of an "employee welfare benefit plan" under ERISA. *See* 29 U.S.C. § 1002(1). Coverage under the Plan was provided in a policy issued by Connecticut General Life Insurance Company. This litigation involves Kunstenaar's eligibility for payments under the Plan.

Provisions relevant to this issue are contained in Connecticut General's policy and the certificates of insurance that Connecticut General provided for covered employees, and also in Halcon's handbook for employees, entitled "An Employee Guide." Those provisions are:

## THE POLICY

### LONG TERM DISABILITY BENEFITS

\*   \*   \*   \*   \*   \*

If sickness ... disables an Employee so that he is completely prevented from performing the duties of his occupation or employment and if the disability continues after the Benefit Waiting Period shown in the Schedule of Benefits, the Insurance Company will pay Monthly Income in an amount determined from the Schedule of Benefits.

\*   \*   \*   \*   \*   \*

### LIMITATIONS

The insurance under this policy does not cover, and no benefits will be paid for, ... any period of disability ... during which the employee is not under the care of a legally qualified physician.

\*   \*   \*   \*   \*   \*

### TERMINATION OF INSURANCE

The insurance on any Employee will automatically terminate on the earliest of the following dates: ...
6. the date of termination of employment.

\*   \*   \*   \*   \*   \*

## THE CERTIFICATES

### LONG TERM DISABILITY BENEFITS

\*   \*   \*   \*   \*   \*

To be entitled to Long Term Disability benefits you must, while your insurance is in effect, be totally disabled from performing the duties of your occupation due to sickness or accidental bodily injury continuously throughout the Benefit Waiting Period shown in the Schedule of Benefits [six months].

\*   \*   \*   \*   \*   \*

### LIMITATIONS

Payment will not be made under this plan for any disability ... during which you are not under the care of a legally qualified physician.

\*   \*   \*   \*   \*   \*

## THE HANDBOOK

### DETERMINATION OF DISABILITY

The plan is intended to provide monthly income benefits for disability over an extended period of time. (The short-term disability plan or sick pay plan takes care of temporary disability.)

Initially, disability means the complete inability to perform the duties of your job with the Company. After two years of disability income has been paid, total disability means complete inability to perform the duties of any occupation for which you might become qualified. Such an occupation need not be with the Company, nor need it be at the same pay level as your last occupation with the Company.

To receive benefits, you must be under the care of a physician....

\*   \*   \*   \*   \*   \*

### SCHEDULE OF PAYMENT

Your monthly income would begin six continuous months after the date you first missed work due to disability.

In June 1985, amid rumors that Texas Eastern planned to lay off a number of Halcon employees, Kunstenaar began to suffer sweating spells, insomnia, loss of concentration and other pre-depression symptoms. In July, during a visit on an unrelated matter, Kunstenaar told the Company's doctor, Dr. De Simone, of his anxiety symptoms, but received no treatment or medication from the doctor. About a month later, Kunstenaar talked with Dr. De Simone on the telephone about his symptoms. The doctor suggested that Kunstenaar try to relax by having a glass of wine with his dinner and taking a long walk thereafter. He also suggested that Kunstenaar use one of the sleeping pills contained in the travel kits given all Halcon executives. Sometime thereafter, the exact date is not clear, Dr. De Simone recommended that Kunstenaar consult a psychiatrist. However, Kunstenaar did not see a psychiatrist until October 18, 1985, almost two months after Kunstenaar's employment was terminated on August 23rd. Moreover, it is undisputed that, prior to

Kunstenaar's discharge on August 23rd, he lost no time from work because of his alleged indisposition.

On November 12, 1985, Kunstenaar submitted a claim for Long Term Disability benefits. The claim was rejected because Kunstenaar had worked steadily until the date of his discharge and had not come under the care of his treating psychiatrist until after his employment had been terminated. Kunstenaar did not seek the timely review of this rejection available to him under ERISA. *See* 29 U.S.C. § 1133(2); 29 C.F.R. § 2560.503–1(g)(3).

Kunstenaar was more successful in his applications for Social Security disability benefits and New York State Workers' Compensation benefits. However, the Department of Health and Human Services determined that Kunstenaar's period of disability commenced on August 23, 1985, the date on which his employment with Halcon ended. The New York Workers' Compensation Board determined that Kunstenaar's disability for purposes of its award began on October 18, 1985, the first day on which there was medical support for his claim. Based primarily on these two awards, Kunstenaar, on April 1, 1987, sought a belated review of his rejected application. Once again, his claim for benefits was rejected. Kunstenaar then instituted this suit in state court. Connecticut General succeeded in removing the action to the Southern District of New York, and both sides then moved for summary judgment.

Because it is undisputed that Kunstenaar's depression symptoms did not cause him to lose any time from work, the basic issue before the district court was the simple, straightforward one of contract interpretation, viz., was inability to work due to sickness an essential element of the term "disability" as used in Connecticut General's policy. The district court correctly held that it was. Referring to the policy requirement that the term "disability" contemplates a sickness that so disables an employee that he is "completely prevented from performing the duties of his occupation or employment", the district court said:

[I]n order for Kunstenaar to be eligible to recover under the policy he must have been totally disabled before August 23, 1985, the date of his termination. According to the terms of the insurance policy this means Kunstenaar has to have been prevented from working prior to his termination. It is an uncontested fact that Kunstenaar did not miss any work, except holidays during the summer of 1985. Kunstenaar supplies various dates to mark the onset of his disability but that discrepancy is not material to the case. Plaintiff confuses illness with total disability. No one is disputing the fact that Kunstenaar was ill. In fact, he may have been ill since June of 1985. However, illness is not to be equated with total disability. Defendants in reviewing Kunstenaar's eligibility properly used the insurance company's definition of total disability as their authority. Upon discovering that Kunstenaar had not been prevented from performing his duties prior to the end of his employment, defendants determined that plaintiff was not "totally disabled" under the policy.

Despite the clarity of the district court's above-quoted language, Kunstenaar contends that the judgment below should be reversed because, he says, the district court did not follow the teaching of the Supreme Court in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), decided several months before the district court's opinion was written. In *Firestone*, the Court held that, at least in those ERISA cases where plan interpretation is an issue, the denial of benefits should be reviewed under a *de novo* standard, unless the plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* 109 S.Ct. at 956. Up to that time, most federal courts, including this court, reviewed the denial of ERISA benefits by fiduciaries and administrators under an arbitrary and capricious standard. *Id.* 109 S.Ct. at 953.

The district court was familiar with the *Firestone* requirement of a *de novo* review as opposed to the arbitrary and capricious standard of review. In denying Kunstenaar's motion to vacate and amend the summary judgment, the district court stated that it had considered all the evidence at the time it made its decision, that it "was aware of the [*Firestone*] case and ruled accordingly." Because the district court made several references in its original opinion to the arbitrary and capricious standard, we are unable to determine whether the court did in fact adhere faithfully to *Firestone*. However, if we conclude, as we do, that the district court reached the correct result, we may affirm upon any ground supported by the record and are not required to adopt the reasoning of the court below. *Helvering v. Gowran*, 302 U.S. 238, 245, 58 S.Ct. 154, 157, 82 L.Ed. 224 (1937); *Forde v. Kee Lox Mfg. Co.*, 584 F.2d 4, 5 (2d Cir.1978).

The term "disability" has a variety of meanings, depending on the context in which it is used. *See, e.g.*, 42 U.S.C. § 423(d)(1) (Social Security disability insurance benefits); New York Work. Comp. Law § 37 (64 McKinney) (occupational diseases); § 201(9) (disability benefits). Statutory definitions such as these are not binding in the instant case. *See Brown v. Retirement Committee of the Briggs & Stratton Retirement Plan*, 797 F.2d 521, 528–29 (7th Cir.1986), *cert. denied*, 479 U.S. 1094, 107 S.Ct. 1311, 94 L.Ed.2d 165 (1987); *Glover v. South Central Bell Telephone Co.*, 644 F.2d 1155, 1158 (5th Cir.1981). The applicable definition is spelled out in the Plan, *i.e.*, Connecticut General's policy. The policy provisions, which are echoed in the certificates of insurance and employees' handbook, state that an employee is eligible for benefits when he is "completely prevented from performing the duties of his occupation or employment." Kunstenaar did not dispute that he reported to work every day, nor did he present any evidence that he was completely unable to perform his duties while there. Under a normal and reasonable construction of the Plan provisions, Kunstenaar could not be considered to have been "completely prevented" from doing those things which he in fact continued to do. *See Taterka v. Nationwide Mutual Ins. Co.*, 91 A.D.2d 568, 457 N.Y.S.2d 53 (1982) (mem.), *aff'd*, 59 N.Y.2d 743, 463 N.Y.S.2d 441, 450 N.E.2d 247 (1983) (mem.); *Voyatzis v. New England Mutual Life Ins. Co.*, 80 A.D.2d 508, 435 N.Y.S.2d 599 (mem.), *appeal withdrawn*, 53 N.Y.2d 940 (1981); *Anthony v. Metropolitan Life Ins. Co.*, 54 A.D.2d 866, 388 N.Y.S.2d 597 (1976) (mem.); *Barasch v. Travelers Ins. Co.*, 267 A.D. 169, 45 N.Y.S.2d 289 (1943), *motion for leave to appeal or reargument denied*, 267 A.D. 819, 47 N.Y.S.2d 101 (1944); *Sosknowski v. Aetna Life Ins. Co.*, 257 A.D. 1035, 13 N.Y.S.2d 791 (1939) (mem.).

Robert Garcia, the Manager of the Plan, stated that the Plan's intent was to provide income in lieu of salary to employees who, due to a disability, could not perform their duties. That intent is manifest in the language of the employees' handbook: "The plan is intended to provide monthly income benefits for disability...." Consistent with this intent, the policy provides that income payments will be reduced by other income earned during the disability period.

The employees' handbook informed all Plan members that "[y]our monthly income would begin six continuous months after the date you first missed work due to disability." The policy and the certificates, in describing when successive disabilities will be considered a single continuous disability, state that disabilities will be deemed continuous unless separated by a "return to active service." If a member could be considered disabled while attending work and performing his duties, the phrase "return to active service" would be meaningless.

Whatever uncertainty there may be concerning the standard of review employed by the district court, we have given appellant the benefit of the full *de novo* review mandated by the Supreme Court in *Firestone, supra*, a review that is within our plenary powers, *City of Yonkers v. Otis Elevator Co.*, 844 F.2d 42, 45 (2d Cir.1988). On the basis of that review, we hold, as did the district court, that Kunstenaar was not disabled within the meaning of Halcon's

Long Term Disability Plan at any time prior to the termination of his employment on August 23, 1985. Because we so hold, we need not reach the question whether Kunstenaar was "under the care" of a physician during the alleged disability period, as required by the terms of Connecticut General's policy.

We have carefully considered Kunstenaar's remaining arguments and find them of insufficient merit to require discussion. The judgment of the district court is AFFIRMED.