**Marianne LOCHER, Plaintiff–Appellee,**

v.

**UNUM LIFE INSURANCE COMPANY OF AMERICA, Defendant–Appellant,**

**Katten Muchin & Zavis, Defendant.**

**Docket No. 03–9229.**

United States Court of Appeals, Second Circuit.

Argued: Oct. 6, 2004.

Decided: Nov. 12, 2004.

Elizabeth L. Koob, Koob & Magoolaghan, New York, NY, for Plaintiff–Appellee.

Patrick W. Begos, Begos & Horgan LLP, Bronxville, NY, for Defendant–Appellant.

Before: MINER, CABRANES, and STRAUB, Circuit Judges.

STRAUB, Circuit Judge.

Defendant–Appellant, UNUM Life Insurance Company of America, appeals from a judgment of the United States District Court for the Southern District of New York (Laura Taylor Swain, *Judge*) entered November 14, 2003, finding, after a three-day bench trial, that Plaintiff–Appellee Marianne Locher was entitled to disability benefits under a long-term disability plan provided by her employer through an insurance policy issued by Defendant–Appellant, and awarding benefits and attorneys' fees and costs. Defendant–Appellant argues that the District Court erred in considering evidence outside the administrative record, finding Plaintiff–Appellee eligible for disability benefits, awarding benefits through the date of judgment, and awarding attorneys' fees. We affirm the judgment of the District Court and write to clarify the standard to be applied by district courts in determining whether to consider evidence outside the administrative record upon a *de novo*

review of factual issues bearing on an administrator's denial of ERISA benefits.

## BACKGROUND

The following are facts that the District Court found, and that neither party contests as clearly erroneous on appeal.

Plaintiff–Appellee, Marianne Locher ("Locher"), was employed as a legal secretary at Katten Muchin & Zavis ("KMZ") from March 9, 1992, until April 8, 1993, when her resignation took effect. Locher was a "participant" within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, in a long-term disability plan (the "Plan") provided by KMZ through an insurance policy issued by UNUM Life Insurance Company of America ("UNUM"). The parties do not dispute that the Plan is an employee benefit welfare plan within the meaning of ERISA. The Plan provides for a monthly benefit for a period of disability, defined as an inability of the insured to "perform each of the material duties of his regular occupation" because of "injury or sickness."

In November 1990, Locher's regular physician, Dr. David Zimmerman, diagnosed Locher as suffering from Chronic Fatigue Syndrome ("CFS"). According to Locher, she did not disclose her condition to KMZ at the time she began working there in March 1992, because she was afraid that KMZ would not hire her if it was known that she had CFS. In or about September 1992, Locher's health began to decline. She began waking up exhausted. She began taking a taxi to work because she did not have the energy to walk to the corner for the bus. As her symptoms became more severe, Locher attempted to preserve her energy for work by stopping most activities outside of work. On January 29, 1993, Locher saw Dr. Zimmerman and discussed her symptoms and difficulties with day-to-day activities. Dr. Zimmerman advised her to reduce her work schedule.

In early 1993, Locher requested that her employee classification be changed from "full-time" to "part-time." By written memorandum on February 17, 1993, a KMZ administrator advised Locher that KMZ would consider her request if she provided a medical certificate attesting to her medical condition and her need for a reduced work schedule. Locher had not provided such documentation as of March 24, 1993, and, on that date, Locher was counseled for "excessive" unscheduled absences and for medical appointments scheduled during the work day. Locher's 1993 annual performance evaluation also indicated that absences and tardiness were an issue. Locher resigned from KMZ on March 29, 1993, effective April 8, 1993. Locher did not inform KMZ that she was leaving due to the escalation of her CFS but, rather, told her office manager, Barbara Oxnam, that her reason for resigning was to "move on." After Locher left KMZ, she worked as a temporary employee for fourteen days between April 16, 1993, and June 7, 1993. In June 1993, Locher consulted Dr. Susan Levine. After personally evaluating Locher during a June 8, 1993, visit and reviewing Dr. Zimmerman's records, Dr. Levine concluded that Locher's "history and laboratory data support the diagnosis of CFS and fibromyalgia" and that Locher had become disabled in April 1993.[1]

---

1. "Fibromyalgia" is "a common and chronic disorder characterized by widespread muscle pain, fatigue, and multiple tender points." *See* National Institute of Arthritis and Musculoskeletal and Skin Diseases, *Questions and Answers about Fibromyalgia*, at http://www.niams.nih.gov/hi/topics/fibromyalgia/fibrofs.htm.

On July 28, 1993, Locher submitted an application for disability benefits to UNUM, claiming that CFS had rendered her unable to work at KMZ beginning April 8, 1993. At the time she filed her application, Locher submitted to UNUM an Attending Physician's Statement from Dr. Zimmerman and a letter from Dr. Levine, and KMZ submitted to UNUM an Employer's Report of Claim, as well as certain of Locher's employee records, including attendance records, an employee data form, and letters concerning her request for a reduced work schedule.

UNUM denied the claim on August 30, 1993, maintaining that Locher was ineligible for benefits because she "work[ed] up to the day which [she] resigned [sic]" and was only absent three days in the three months prior to her resignation. Locher submitted an administrative appeal on September 26, 1993, supported by additional evidence in the form of a letter report from Dr. Zimmerman dated September 1, 1993, and a case history report. Subsequently, upon UNUM's request, Dr. Zimmerman provided his office records to UNUM. UNUM upheld the denial of Locher's claim on March 4, 1994, stating that while the medical evidence suggested an inability to work as of July 1993, it did not suggest disability as of the date last worked, April 8, 1993. On March 17, 1995, Locher requested reconsideration of this decision and submitted a copy of the March 4, 1995, decision she received from the Social Security Administration granting her disability benefits. On reconsideration, UNUM reviewed Dr. Levine's office records and asked Dr. John Dodge, an "on-site" physician, to review all of the medical evidence in Locher's claim file. Based in part on Dr. Dodge's conclusions, UNUM denied Locher's second appeal on November 15, 1995, again on the basis of insufficient evidence to support a finding of inability to work as of April 8, 1993.

In May 1996, Locher commenced this action against UNUM and KMZ. The parties subsequently moved for summary judgment based on the administrative record. The District Court denied the motions. In May 2000, Locher voluntarily dismissed her claims against KMZ.

In August 2000, UNUM sought an *in limine* ruling to limit the evidence at trial to the administrative record. Among other things, UNUM objected to the proposed testimony of Dr. Richard Podell, whom Locher retained in February 2000 as an expert witness, and Cynthia M'Diaye, a former co-worker of Locher's at KMZ. The District Court denied UNUM's motion, finding that "all of the persons involved in the initial and appellate review of Locher's claim under the Disability Plan were UNUM employees," and thus UNUM was a "conflicted administrator within the meaning of *DeFelice* [*v. American International Life Assurance Co. of New York*, 112 F.3d 61 (2d Cir.1997)]," and that UNUM had insufficient written procedures for claims review. Based on those findings, the court found "good cause" for the admission of evidence outside the administrative record. The District Court also stated that UNUM's conflict of interest was "per se 'good cause' for allowing additional evidence at trial."

The District Court thereafter conducted a three-day bench trial. Six witnesses testified, including Locher; Dr. Zimmerman, her regular physician; Dr. Dodge, UNUM's on-site physician; and Dr. Podell, whom Locher saw in 2000. Dr. Podell, who specializes in CFS, testified that he saw Locher in February 2000, confirmed the diagnosis of CFS and disability as of April 1993, and found credible Locher's account of the progress of her illness. The parties also introduced the claim file,

deposition transcripts, and various medical and employment records and reports.

On March 6, 2002, the District Court issued an Opinion and Order setting forth its finding that Locher was disabled within the meaning of the policy as of April 8, 1993. On November 7, 2003, following a motion for reconsideration by UNUM and submissions on the amount of benefits, attorneys' fees and costs, and prejudgment interest, the District Court directed that final judgment be entered in favor of Locher finding that she was disabled as of April 8, 1993, and was entitled to benefits under the Plan in the monthly amount of $2,129.40 for the months of July, August, and September 1993, and a monthly benefit of $1,355.70 for each month through June 2003, the month in which judgment was entered. The District Court also awarded Locher prejudgment interest and attorneys' fees and costs. Judgment was entered on November 14, 2003, and UNUM filed a notice of appeal on November 19, 2003.

## DISCUSSION

### I. Standard of Review

■ The District Court's factual findings are reviewed for "clear error," and its legal conclusions are reviewed *de novo*. *See Krizek v. Cigna Group Ins.*, 345 F.3d 91, 99 (2d Cir.2003). "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (internal quotation marks omitted). Clear error review extends to a district court's factual findings based on inferences drawn from other facts, as well as findings based on documentary evidence. *See id.*

### II. Consideration of Evidence Outside the Administrative Record

■ Where an ERISA plan does not accord an administrator "discretionary authority to determine eligibility for benefits or to construe the terms of the plan," a district court reviews all aspects of an administrator's eligibility determination, including fact issues, *de novo*.[2] *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *see also Krizek*, 345 F.3d at 98. In *Masella v. Blue Cross & Blue Shield of Connecticut, Inc.*, 936 F.2d 98, 103–05 (2d Cir. 1991), we held that a district court may consider evidence outside the administrative record upon a *de novo* review of issues of plan interpretation. In *DeFelice v. American International Life Assurance Company of New York*, 112 F.3d 61 (2d Cir.1997), we addressed whether a district court may consider evidence outside the administrative record upon a *de novo* review of *factual* issues. We declined to issue a broad ruling on the permissible range of evidence in any case involving *de novo* review of factual issues but, rather, decided that, on the facts before us, the consideration of additional evidence was warranted. *Id.* at 65–66. We found significant that the appeals committee that reviewed DeFelice's claim was comprised entirely of employees of the administrator, that there existed no established criteria for determining an appeal, and that the committee apparently had a practice of destroying or discarding all records within minutes after hearing an appeal. *Id.* at 66. In such circumstances, we held, "[t]he policy expressed in *Perry* [*v. Simplicity Engineering*, 900 F.2d 963, 966–67 (6th Cir. 1990),] that district courts should not become 'substitute plan administrators' is in-

---

**2.** The parties do not dispute that the Plan here does not confer such discretionary authority on the insurer or that the *de novo* standard applies.

appropriate." 112 F.3d at 66. When an administrator is conflicted, we stated, "[p]laintiffs are utterly helpless against the whim of [its] interpretation of the facts," and "the fairness of the ERISA appeals process cannot be established using only the record before the administrator." *Id.* "In such circumstances," we held, "[district] courts *must* exercise fully their power to review [benefits determinations] *de novo* and to *be* substitute administrators." *Id.*

Thus, in *DeFelice*, we set forth the principle that the decision "whether to admit additional evidence is one which is discretionary with the district court, but which discretion ought not to be exercised in the absence of good cause," and we applied that principle by holding that, "upon *de novo* review, even purely factual interpretation cases may provide a district court with good cause to exercise its discretion to admit evidence not available at the administrative level if the administrator was not disinterested" and, "[i]n this situation, the district court may assume an active role in order to ensure a comprehensive and impartial review of the case." 112 F.3d at 66; *see also id.* at 67 ("A demonstrated conflict of interest in the administrative reviewing body is an example of 'good cause' warranting the introduction of additional evidence."). We also held that, in such circumstances, "the plaintiff need not demonstrate that the conflict caused her actual prejudice in order for the court to consider the conflict to be 'good cause.'" *Id.* at 67.

Several district courts in this Circuit— including the District Court below—have interpreted *DeFelice* as holding that an administrator's dual status as claims reviewer and claims payor is *per se* "good cause" for allowing additional evidence upon a *de novo* review of factual issues. *See Locher v. Unum Life Ins. Co. of Am.,* 126 F.Supp.2d 769, 773 (S.D.N.Y.2001); *see also, e.g., Keiser v. CDC Inv. Mgmt. Corp.,* No. 99 Civ. 12101, 2003 WL 1733729, at *10 (S.D.N.Y. Mar. 25, 2003) ("[T]he decision-maker's conflict of interest is per se 'good cause' under *DeFelice* for allowing the Court to consider evidence that was not before the Plan administrator."); *Parker v. Reliance Standard Life Ins. Co.,* No. 99 Civ 1822, 2000 WL 97362, at *3 (S.D.N.Y. Jan. 27, 2000) ("[I]t is undisputed that Reliance both makes the eligibility determinations under the [p]lan and pays the disability benefits. That fact alone makes Reliance a conflicted administrator under *DeFelice* and its progeny.") (internal citation omitted). Other district courts found no *per se* rule and held that "good cause" is established under *DeFelice* only if the plaintiff can demonstrate that the administrator was conflicted and that the additional evidence "should have been included in the administrative record but was not, because of no fault of the claimant." *Suozzo v. Bergreen,* No. 00 Civ 9649, 2003 WL 22387083, at *4 (S.D.N.Y. Oct. 20, 2003); *see also Kaus–Rogers v. Unum Life Ins. Co. of Am.,* No. 01 CV 709S, 2004 WL 1166640, at * 5 (W.D.N.Y. April 4, 2004).

■ We take this opportunity to clarify our holding in *DeFelice* and make plain that a conflict of interest does not *per se* constitute "good cause" to consider evidence outside of the administrative record upon a *de novo* review of factual issues bearing on an administrator's denial of ERISA benefits. As noted above, in *DeFelice*, we based our holding not only on a demonstrated conflict of interest, but also upon the procedural problems with the plan administrator's appeals process. 112 F.3d at 66. We found significant that the appeals committee had no established criteria for determining an appeal and had a

practice of destroying records within minutes after hearing an appeal. *See id.*

Moreover, a *per se* rule would effectively eliminate the "good cause" requirement and the discretion afforded to district courts in deciding whether to admit additional evidence, because claims reviewers and payors are almost always either the same entity or financially connected in some other way. *Cf. DeFelice,* 112 F.3d at 66 (setting forth requirement of "good cause"); *Critchlow v. First UNUM Life Ins. Co. of America,* 340 F.3d 130, 133 n. 2 (2d Cir.2003) (noting that the decision to "consider information outside the administrative record is a discretionary one even where there is 'good cause' "), *withdrawn and vacated on reconsideration on other grounds,* 378 F.3d 246 (2d Cir.2004). Additionally, a *per se* rule is inconsistent with the congressional purposes and goals of ERISA. The primary goals of ERISA are "to promote the interests of employees and their beneficiaries in employee benefit plans," "to protect contractually defined benefits," *Firestone,* 489 U.S. at 113, 109 S.Ct. 948 (internal quotation marks omitted), and "to maintain the premium costs of [an ERISA] system at a reasonable level," 29 U.S.C. § 1001b(c)(5). The Supreme Court has emphasized both "the public interest in encouraging the formation of employee benefit plans" and "the need for prompt and fair claims settlement procedures." *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 54, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987).

As noted above, because claims reviewers and payors are often interconnected, a *per se* rule would allow additional evidence to be presented at the district court level in almost every circumstance on the basis of a presumed conflict of interest. A *per se* rule would also eliminate the appropriate incentive for a claimant to submit all available evidence regarding the claimant's

condition to the insurance company upon first submitting a claim. *Cf. Masella,* 936 F.2d at 105 (noting claimant's obligation at the administrative level to "provide particulars regarding the claimant's condition"). Accordingly, a *per se* rule would undermine the significant ERISA policy interests of minimizing costs of claim disputes and ensuring prompt claims-resolution procedures. *See Pilot Life,* 481 U.S. at 54, 107 S.Ct. 1549; *Varity Corp. v. Howe,* 516 U.S. 489, 497, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) (indicating that courts should take into account Congress's "desire not to create a system that is so complex that administrative costs, or litigation expenses, unduly discourage employers from offering welfare benefit plans"); *Hall v. Unum Life Ins. Co. of Am.,* 300 F.3d 1197, 1202 (10th Cir.2002) ("By strictly limiting the circumstances in which supplementary evidence may be presented, the risk of increasing decision costs—and of deterring employers from providing pension and benefit plans to their employees—is controlled.").

In keeping with these principles, we held in *DeFelice* that "good cause" existed not merely because the claims reviewer and claims payor were the same entity, but also because the procedures employed in arriving at the claim determination were flawed. 112 F.3d at 66. We have also found that "good cause" for consulting evidence outside the administrative record existed where an insurer's claimed reason for denying a claim was not stated in its notices to the claimant, *Juliano v. Health Maint. Org. of New Jersey, Inc.,* 221 F.3d 279, 289 (2d Cir.2000), but did not exist where an insurer gave the claimant "ample time to submit additional materials" and had already discussed the claimant's case with the two treating physicians whose testimony was to be introduced, *Muller v. First Unum Life Ins. Co.,* 341 F.3d 119, 125–26 (2d Cir.2003).

Despite the District Court's statement that we had set forth a *per se* rule in *DeFelice*, the District Court did consider facts other than the structural conflict in arriving at its good cause determination, namely, that "UNUM had no written procedures for claims review." Crediting the deposition testimony of Sandy Kaserman, a "senior benefit analyst" at UNUM who worked on Locher's appeal, the District Court found that "UNUM maintain[ed] no written procedures, other than the terms of the Disability Plan and the summary description of the terms of that plan, for evaluating and processing appeals." A failure to maintain written procedures was considered—and found to be significant—in our finding of good cause in *DeFelice*. 112 F.3d at 66. Where sufficient procedures for initial or appellate review of a claim are lacking, there exist greater opportunities for conflicts of interest to be exacerbated and, in such a case, the fairness of the ERISA appeals process cannot be established using only the record before the administrator. In such circumstances, as we stated in *DeFelice*, the district court may assume an active role in order to ensure a comprehensive and impartial review of the case. Accordingly, the District Court did not err in considering evidence outside the administrative record.

■ We hold that a conflicted administrator does not *per se* constitute good cause, and caution district courts that a finding of a conflicted administrator alone should not be translated *necessarily* into a finding of good cause. In the case at hand, we hold that the District Court's finding of good cause is bolstered in part by the finding that there were insufficient procedures for internal or appellate review. In so finding, we do not conclude that a finding of a conflicted administrator, standing alone, can never constitute good cause. We need not address that possibili-ty here, as it is not presented to us, but we note that it may be possible, in unforeseen circumstances, for good cause to rest entirely on the existence of a conflicted administrator.

### III. *Sufficient Evidence of Disability*

UNUM also argues that the District Court erred in finding that Locher was disabled under the Plan. UNUM argues that: (1) the District Court improperly relied on the testimony of Dr. Podell, whom, according to UNUM, Locher "retained to assist her litigation position;" (2) Locher did not introduce any other reliable evidence demonstrating that her condition worsened to the point that, on April 8, 1993, she could no longer perform the material duties of her occupation; and (3) the District Court disregarded "clear precedent" that an insured who works full time until quitting or being terminated cannot recover benefits, even if allegedly suffering from an illness at the time.

■ In its first challenge to the District Court's finding of disability, UNUM reiterates its argument that the District Court improperly considered evidence outside the administrative record. UNUM argues that the District Court improperly relied on the testimony of Dr. Podell because, if Dr. Podell's testimony had been a part of the original administrative record, UNUM would have been within its rights to reject that testimony. As noted above, however, the District Court correctly considered evidence outside the administrative record. *See supra* at p. 296. Moreover, upon *de novo* review, a district court may render a determination on a claim without deferring to an administrator's evaluation of the evidence. *Cf. Connors v. Conn. Gen. Life Ins. Co.*, 272 F.3d 127, 135 (2d Cir.2001) (noting that, upon *de novo* review, a district court is "free to evaluate [a treating physician's] opinion in the context of any

factors it considered relevant, such as the length and nature of their relationship, the level of the doctor's expertise, and the compatibility of the opinion with the other evidence").

■ Relying on our decision in *Kunstenaar v. Connecticut General Life Insurance Co.*, 902 F.2d 181 (2d Cir.1990), UNUM also argues that the District Court disregarded "clear precedent that an insured who works full time until quitting or being terminated cannot recover benefits, even if allegedly suffering from an illness at the time." UNUM's statement of our precedent, however, is off the mark. *Kunstenaar* does not stand for this proposition and is distinguishable from the instant case. In *Kunstenaar*, we found that the claimant could not be considered disabled, because he had failed to present "any evidence" that he met his plan's definition of disability prior to his termination from employment, when his coverage under the plan at issue ended. *Id.* at 184. We also found it significant that the claimant had missed no work days as a result of his alleged disability and had consulted a doctor only after having been terminated for reasons unrelated to job performance. *Id.* at 183. Here, Locher submitted evidence of what her superiors called "excessive" unscheduled absences and medical appointments scheduled during the work day. Accordingly, *Kunstenaar* provides no support for UNUM here. Moreover, as Locher points out, the argument pressed by UNUM would essentially put disability claimants in a "Catch 22" because those claimants who were working could not be considered disabled and yet claimants who had stopped working would not be covered under the Plan. Certainly, claimants who can establish absences and resignation based upon an inability to continue working should be able to claim that their disability prevented them from performing the duties of their occupation.

We conclude that the evidence presented at trial was sufficient to support the District Court's finding that Locher was disabled, *i.e.*, could not perform each of the material duties of her regular occupation as of April 8, 2003.

## IV. *Award of Benefits*

■ UNUM argues that the District Court lacked jurisdiction to award payment of benefits beyond April 8, 1993, because the Plan's provision for a monthly benefit payment necessarily requires a new determination of disability to be made each month. For this reason, UNUM argues, the District Court should have remanded the matter to the administrator for a determination of disability for any month after April 8, 1993.

We find this case distinguishable, however, from *Peterson v. Continental Casualty Co.*, 282 F.3d 112 (2d Cir.2002), and *Jones v. UNUM Life Insurance Co. of America*, 223 F.3d 130 (2d Cir.2000), on which UNUM relies. In *Peterson*, the disability plan at issue provided for two distinct types of long-term disability benefits. 282 F.3d at 114. The first type of benefit was available for an initial twenty-four-month period after the claimant demonstrated an inability "to perform the substantial and material duties of [the employee's] regular occupation." *See id.* at 114–15. The second benefit was available from the conclusion of the twenty-four-month period until the employee's 65th birthday, after a showing of inability "to engage in any occupation for which [the employee is] or become[s] qualified." *See id.* at 115. Because the plan at issue provided for a reevaluation of disability at the end of the initial twenty-four-month period, but Peterson's eligibility for benefits after the initial twenty-four-month period had not

been determined by the claim administrator before the district court adjudicated the issue, we vacated the district court's judgment insofar as it related to Peterson's eligibility for such future benefits. *See id.* at 115–18. In *Jones,* the disability plan similarly provided for reevaluation after the first twenty-four months of onset of disability, and we held that the issue of eligibility for permanent benefits had not ripened into a dispute capable of conferring jurisdiction on a district court until the plan administrator had made a determination in that regard. 223 F.3d at 140–41.

Here, unlike in *Peterson* and *Jones,* there is no explicit requirement in the Plan for a reevaluation after an initial finding of disability. The mere fact that the Plan provides for a monthly payment of benefits does not suggest such a requirement. Additionally, the Plan indicates that evidence of continued disability need be provided only "upon request," rather than prior to each monthly payment. Moreover, the only other language in the Plan that refers to a benefit period establishes the maximum period for benefits for the insured at age sixty-five. Finally, even assuming that the District Court was required to find continued disability, Dr. Podell testified at trial that Locher was then disabled, and the District Court credited this testimony. UNUM has submitted no evidence to suggest that Locher's disability did not persist through the date of the District Court's judgment, and by denying Locher her benefits starting in 1993, UNUM may not now challenge an award on the basis of an insufficiency of information for which it is responsible. Accordingly, UNUM's challenge to the District Court's award of benefits fails.

## V. *Attorneys' Fees*

■ Pursuant to 29 U.S.C. § 1132(g)(1), a court has discretion to award reasonable attorneys' fees "to either party" in an ERISA action. The decision of whether to award attorneys' fees is ordinarily based on five factors:

> (1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants.

*Chambless v. Masters, Mates & Pilots Pension Plan,* 815 F.2d 869, 871 (2d Cir. 1987). "ERISA's attorney's fee provisions must be liberally construed to protect the statutory purpose of vindicating retirement rights ...." *Id.* at 872.

UNUM claims that the "American Rule" applies where an ERISA claimant prevails after a District Court conducted a trial and considered evidence outside the administrative record as part of its *de novo* review. We have not adopted such a standard and apply the *Chambless* factors here. *Cf. Juliano v. Health Maint. Org. of New Jersey, Inc.,* 221 F.3d 279, 292 (2d Cir.2000) (affirming use of *Chambless* factors where evidence outside administrative record was considered).

■ We review the District Court's decision for abuse of discretion. *Chambless,* 815 F.2d at 871. The District Court found that the relevant factors weighed in favor of awarding Locher attorneys' fees. As to the first factor, it found that, though UNUM did not act in bad faith in rejecting the claim, it was culpable because Locher was entitled to benefits under the Plan and because UNUM's principal reviewer (Dr. Dodge, UNUM's on-site physician) rejected medical conclusions without properly following up with the evaluators, seeking

independent evaluations from persons with comparable qualifications, or examining Locher himself when troubled by the perceived inconsistencies between the medical office files and documents submitted in support of the benefit application. The District Court also held that the trial evidence showed that Dr. Dodge's rejection of Locher's proffered medical evaluations was based in significant part on Dr. Dodge's general assumptions as to human behavior, rather than scientific analysis of medical evidence. These findings are a sufficient basis for the District Court's determination as to culpability. *See Salovaara v. Eckert*, 222 F.3d 19, 28 (2d Cir.2000) (indicating that a defendant is "culpable" under *Chambless* where it "violated ERISA, thereby depriving plaintiffs of rights under a pension plan and violating a Congressional mandate") (internal quotation marks omitted); *see also McPherson v. Employees' Pension Plan of Am. Re–Ins. Co., Inc.*, 33 F.3d 253, 256–57 (3d Cir.1994) ("[C]ulpable conduct is commonly understood to mean conduct that is 'blameable; censurable; ... at fault; involving the breach of a legal duty or the commission of a fault ....' ") (quoting *Black's Law Dictionary* (6th ed. 1990)).

The District Court also found that the second factor, namely, relative ability to pay, also weighed in favor of Locher. Though UNUM presses a general theory that policyholders may reduce the benefit offering "if litigation and other plan costs become too high," with respect to the particular case before us, UNUM does not deny that it has the ability to pay.

The District Court also found satisfaction of the third and fourth factors, finding that an award of fees would serve to deter similarly inappropriate claims evaluation procedures and that the relative merits of the parties' positions favored Locher. Though the District Court did not expand on its reasoning for such findings, they do not appear to be an abuse of discretion in light of the record before us, and the District Court's rationale as to other factors, *i.e.*, that UNUM wrongly denied Locher benefits, and that UNUM's evaluation practices were fundamentally flawed.

As to the fifth factor, the District Court held that although Locher's was not a common fund case, her action "served to bring under scrutiny the application of questionable evaluation practices with respect to a difficult-to-diagnose and difficult-to-treat ailment and thus provided an opportunity to increase knowledge and improve procedures in a way that may ultimately benefit others." We have not yet recognized such circumstances to satisfy this fifth factor; that notwithstanding, failure to satisfy the fifth *Chambless* factor does not preclude an award of attorneys' fees. *See Mendez v. Teachers Ins. and Annuity Ass'n and College Ret. Equities Fund*, 982 F.2d 783, 789 (2d Cir.1992) (citing *Ford v. New York Cent. Teamsters Pension Fund*, 642 F.2d 664, 665 (2d Cir.1981) (per curiam)).

In sum, the District Court did not exceed its allowable discretion in assessing or balancing the *Chambless* factors. Accordingly, we decline to upset the District Court's award of attorneys' fees.

## CONCLUSION

We hold, under *DeFelice*, that a conflict of interest does not *per se* establish "good cause" to consider evidence outside the administrative record upon a *de novo* review of factual issues bearing on an administrator's denial of ERISA benefits; that the District Court properly found "good cause" in the instant case; and that the District Court did not err in considering evidence outside the administrative record. Furthermore, we hold that the District Court did not err in finding that Plaintiff–Appellee was entitled to disability benefits

under the Plan, awarding benefits through the date of judgment, and awarding Plaintiff–Appellee attorneys' fees. For the foregoing reasons, we affirm the judgment of the District Court.