Nancy **TRUSSEL**, Plaintiff,

v.

**CIGNA LIFE INSURANCE COMPANY OF NEW YORK and Cornell University, Defendants.**

**No. 07 Civ. 6101.**

United States District Court, S.D. New York.

April 4, 2008.

---

**90.** *See* New Code § 24–218(b)(1)-(3), (c).

**91.** Cpt. ¶ 25 (emphasis in original).

388

Jason A. Newfield, Esq., Justin Corey Frankel, Esq., Frankel & Newfield, P.C., Garden City, NY, for Plaintiff.

Emily Anna Hayes, Esq., Michelle Marie Arbitrio, Esq., Wilson, Elser, Moskowitz, Edelman & Dicker, White Plains, NY, for Defendants.

### *OPINION AND ORDER*

SHIRA A. SCHEINDLIN, District Judge.

## I. INTRODUCTION

Nancy Trussel brings this action pursuant to section 502(a)(1) (B) of the Employee Retirement Income Security Act ("ERISA"). Trussel moves to compel discovery. For the reasons set forth below, the motion is granted.

## II. BACKGROUND

Trussel suffers from transverse myelitis, a neurological disorder that affects the central nervous system.[1] Her symptoms include a complete lack of bowel and bladder control and severe pain in the left leg.[2] Her range of motion is restricted, leaving her unable to balance, stoop, kneel, crouch, or squat.[3] Until November of 2003, Trussel was employed as a human resources associate at Cornell University. At that time, she ceased working and filed a claim for disability insurance with her provider, CIGNA Life Insurance Company of New York ("CIGNA"). Trussel received disability benefits for twelve months, after which CIGNA terminated benefits, citing lack of disability within the meaning of the policy.[4] Trussel appealed that decision and CIGNA again denied benefits on January 24, 2006 (the "January 24 Letter"), relying in part on a report by Dr. Joseph Jares.[5] Dr. Jares reviewed Trussel's medical charts, spoke to Trussel's treating physi-

cian, and submitted his initial report to CIGNA on November 18, 2005.[6] Dr. Jares submitted three addenda to this report on December 12 and December 21, 2005, and January 5, 2006.[7]

After exhausting her administrative remedies, Trussel filed this lawsuit and now seeks discovery beyond the administrative record.

## III. LEGAL STANDARD

### A. Standard of Review

A determination of the standard of review is premature at this stage in the litigation.[8] However, a discussion of the possible standards is instructive in tailoring the scope of discovery. A denial of benefits under ERISA "is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary the discretionary authority to determine eligibility for benefits or to construe

---

1. *See* Plaintiff's Memorandum of Law in Support of Motion to Compel Discovery ("Pl. Mem.") at 1.

2. *See id.* at 6.

3. *See* Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Compel Discovery ("Def.Opp.") at 9.

4. *See id.* at 8. The policy states that:

   An Employee will be considered Disabled if, because of Injury or Sickness,
   1. the Employee is unable to perform all the material duties of his or her regular occupation, or solely due to Injury or Sickness, he or she is unable to earn more than 80% of his or her Indexed Covered Earnings; and
   2. After Disability Benefits have been payable for 12 months, the Employee is unable to perform all the material duties of any occupation for which they may reasonably become qualified based on education, training or experience.

   Cornell Long Term Disability Plan ("Policy"), at 6, Ex. 2 to Def. Opp.

5. *See* 1/24/06 Letter from Lisa Lyle, Appeals Claim Manager, to Nancy Trussel ("1/24/06 Letter"), Ex. 3 to Def. Opp.

6. *See* Def. Opp. at 8–9. There is no indication that Dr. Jares physically examined Trussel.

7. *See id.*

8. *See Schalit v. CIGNA Life Ins. Co. of New York*, No. 07 Civ. 0476, 2007 WL 2040587, *1, 2007 U.S. Dist. LEXIS 50808, at *3 (S.D.N.Y. July 13, 2007) ("The standard of review has not yet been determined in this case, and in fact, that determination might well be premature."); *Anderson v. Sotheby's Inc. Severance Plan*, No. 04 Civ. 8180, 2005 U.S. Dist. LEXIS 9033, at *11 (S.D.N.Y. May 13, 2005) ("Based on the record before me, it would be premature for me to make a finding on the standard of review; this is a decision more appropriately reserved for [the district court judge], either at trial or upon a dispositive motion."). *See also Fay v. Oxford Health Plan*, 287 F.3d 96, 104 (2d Cir.2002) ("The plan administrator bears the burden of proving that the deferential standard applies.").

the terms of the plan." [9] Where the benefit plan grants the fiduciary discretionary authority, a district court "must review deferentially a denial of benefits." [10] A district court may reverse a denial of benefits only if the denial was "arbitrary and capricious, that is 'without reason, unsupported by substantial evidence or erroneous as a matter of law.' " [11] Under this deferential standard of review, district courts are usually limited to the administrative record.[12] However, the Second Circuit has found that "[o]n such an issue [as conflict of interest], which is distinct from the reasonableness of the plan administrators' decision, the district court will not be confined to the administrative record." [13] Indeed, other circuits have ruled similarly, finding that "[d]irect evidence of a conflict is rarely likely to appear in any plan administrator's decision." [14] Therefore, where a conflict of interest exists, the court may review evidence outside of the administrative record.

## B. The Good Cause Requirement

■ The discretionary decision to admit evidence beyond the administrative record "ought not to be exercised without good cause." [15] However, at the discovery stage, the plaintiff need not "make a full good cause showing, but must show 'a reasonable chance that the requested discovery will satisfy the good cause requirement.' " [16] In *Anderson v. Sotheby's Inc. Severance Plan*, Magistrate Judge Douglas F. Eaton explained this less-than-good-cause requirement, stating, "If a plaintiff were forced to make a full good cause showing just to obtain discovery, then he would be faced with a vicious circle: To obtain discovery, he would need to make a showing, that in many cases, could be satisfied only with the help of discovery." [17] The good cause standard required to obtain evidence beyond the administrative record is therefore less stringent than when requesting that the court to consider

**9.** *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).

**10.** *Miller v. United Welfare Fund,* 72 F.3d 1066, 1070 (2d Cir.1995) (citing *Firestone Tire,* 489 U.S. at 115, 109 S.Ct. 948 (1989)).

**11.** *Id.* (quoting *Pagan v. NYNEX Pension Plan,* 52 F.3d 438, 442 (2d Cir.1995) (quotation marks and citations omitted)). *Accord Krauss v. Oxford Health Plans, Inc.,* 517 F.3d 614 (2d Cir.2008).

**12.** *See Miller,* 72 F.3d at 1071.

**13.** *Zervos v. Verizon New York, Inc.,* 252 F.3d 163, 174 (2d Cir.2001). *Accord Firestone Tire,* 489 U.S. at 115, 109 S.Ct. 948 ("[I]f a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion."); *Wagner v. First Unum Life Ins.Co.,* 100 Fed. Appx. 862, 864 n. 1 (2d Cir.2004) ("[D]iscovery may be appropriate in some cases where a petitioner seeks to show a

conflict of interest."); *Asuncion v. Met. Life Ins. Co.,* 493 F.Supp.2d 716, 722 (S.D.N.Y. 2007) ("Plaintiff [is] entitled to some limited discovery of facts not contained in the administrative record" because such discovery is "sought to establish a conflict of interest"); *Porter v. Prudential Ins. Co. of Am.,* No. 05 Civ. 6113, 2006 WL 2038457, at *2 (S.D.N.Y. July 18, 2006) ("[D]iscovery geared toward assessing potential conflicts of interest ... would be proper.").

**14.** *Pinto v. Reliance Standard Life Ins. Co.,* 214 F.3d 377, 389 (3d Cir.2000).

**15.** *DeFelice v. American Int'l Life Assurance Co. of New York,* 112 F.3d 61, 66 (2d Cir. 1997).

**16.** *Schalit v. CIGNA Life Ins. Co.,* 2007 WL 2040587, *2, 2007 U.S. Dist. LEXIS 50808, at *6 (quoting *Anderson,* 2005 U.S. Dist. LEXIS 9033, at *17).

**17.** *Anderson,* 2005 U.S. Dist. LEXIS 9033, at *17.

such evidence in its final determination.[18]

## IV. DISCUSSION

The question at this stage of the litigation is whether additional discovery should be permitted prior to determining the standard of review, and more specifically, whether Trussel has made a sufficient showing of good cause as described in *Anderson*. Trussel's principal argument is that the plan fiduciary and Dr. Jares were both tainted by a conflict of interest. As detailed below, Trussel offers Dr. Jares's medical report together with addenda, a surveillance tape, and the Social Security Administration ("SSA") letter granting disability status to show a reasonable chance that the discovery requested will satisfy the good cause requirement.

### A. The Medical Report and Addenda

Between November 2006 and January 2007, CIGNA requested that Dr. Jares submit a medical report and three subsequent addenda evaluating Trussel's disability status.[19] Trussel argues that Dr. Jares's opinion changed over the course of these addenda, and that the plan fiduciary requested additional addenda until Dr. Jares provided the opinion that would allow CIGNA to deny benefits.[20] Trussel asserts that this evidence demonstrates Dr. Jares was tainted by a conflict insofar as his loyalty was divided between his patient, Trussel, and his employer, CIGNA.[21] Trussel also asserts that this change of opinion shows that the plan fiduciary breached her duty of loyalty under

ERISA by seeking to influence the conclusion reached by Dr. Jares.[22]

CIGNA does not dispute that it requested three separate addenda from Dr. Jares after receiving his report, but explains that the addenda were necessary to clarify the question for the doctor, and therefore his opinion changed as the question changed.[23] CIGNA asserts that it asked Dr. Jares to evaluate whether Trussel could perform "any occupation," as required by the policy, but his report and first two addenda only addressed whether she could perform her specific occupation as a human resources associate. However, in his initial report, Dr. Jares specifically stated that Trussel's "neuropathic pain ... plus the combination of complete lack of bowel and bladder control would make it impossible for Ms. Trussel to work." [24] He confirmed this view in the first addendum, but then found in the second and third addenda that Trussel was not disabled because she had not shown she was unable to work in "any occupation." His finding mirrors the policy standard that a claimant is disabled where "[a]fter Disability Benefits have been payable for twelve months, the Employee is unable to perform all the material duties of *any occupation* for which they may reasonably become qualified based on education, training or experience." [25]

Even if CIGNA is able to resolve the discrepancies between the report and the three addenda, Dr. Jares's finding that Trussel could perform a sedentary occupation "with restrictions" conflicts with the

---

18. *See id.*

19. *See* Def. Opp. at 8–9; Pl. Mem. at 6–8, 7 n. 5.

20. *See* Pl. Mem. at 6–7.

21. *See id.* at 8.

22. *See id.* at 8–9.

23. *See* Def. Opp. at 8–9.

24. Pl. Mem. at 6.

25. Policy at 6 (emphasis added).

final determination that Trussel was not disabled, meaning that she could "perform all the material duties of any occupation."[26] CIGNA's efforts to pick and choose the portions of the policy it wished Dr. Jares to interpret also tend to show a conflict of interest. The January 24 Letter denying Trussel benefits used the phrase "any occupation" without the context of the modifying terms from the policy.[27] The denial letter also indicated that Dr. Jares's evaluation did not consider the additional requirements found in the policy (*i.e.*, that "the Employee is unable to perform all the material duties of any occupation for which they [sic] may reasonably become qualified based on education, training or experience"). That Dr. Jares outlined several restrictions impairing Trussel lends further support to the idea that neither the doctor nor CIGNA evaluated Trussel's ability to "perform all the material duties" of a sedentary occupation.[28] The lack of any reference to the "material duties" and "qualifications" requirements in the policy supports Trussel's claim that the plan fiduciary was result-oriented and conflicted in her interests.[29]

Collectively, this evidence demonstrates a reasonable possibility that the requested discovery will satisfy the good cause requirement. Trussel offers two other grounds for good cause: the surveillance tape and SSA's determination of disability.

## B. The Surveillance Tape

Trussel next asserts that the plan fiduciary's use of and Dr. Jares's reliance on surveillance video footage demonstrates a conflict of interest.[30] The video surveillance documents Trussel's travel in a van paid for by CIGNA to an independent medical examination required by CIGNA.[31] Trussel asserts that mandating travel for approximately ninety minutes, videotaping the travel, and then using the videotape to determine that she is not disabled, amounts to a biased approach that breaches the plan fiduciary's duty of loyalty to Trussel.[32]

CIGNA argues that it is irrelevant that the surveillance was conducted during travel mandated by CIGNA since this surveillance proves a "discrepancy" between the diagnosis by her treating physician and the true severity of her disability.[33] While CIGNA does not discuss the length or content of the surveillance, Trussel contends that the surveillance amounts to approximately two minutes of footage.[34] That two minutes of surveillance footage would be given more weight than the opinion of Trussel's treating physician[35] may also demonstrate a conflict of interest on the part of both Dr. Jares and the plan fiduciary.

---

26. *Id.*

27. 1/24/06 Letter.

28. *See id.* at 2 ("[I]n regards to your ability to perform any occupation, [Dr. Jares] advised you would be capable of performing at a sedentary occupational level.... Dr. Jares concluded that with the restrictions outlined you would be capable [of] sedentary capacity on a full time basis.").

29. *See id.* at 3 ("[Y]our claim was reviewed to determine your ability to perform any occupation.").

30. *See* Pl. Mem. at 9.

31. *See id.*

32. *See id.*

33. *See* Def. Opp. at 10.

34. *See* Pl. Mem. at 9.

35. *See* 1/24/06 Letter at 3.

## C. The Social Security Determination

Trussel's final assertion is that CIGNA's failure to consider the SSA determination letter further demonstrates a conflict of interest. Trussel supports this contention with case law that suggests failure by a plan fiduciary to consider the findings of the SSA may be evidence of a conflict of interest.[36] CIGNA offers conflicting evidence as to whether it considered the disability determination by the SSA.

CIGNA first argues that it did consider the SSA findings. CIGNA states that the January 24 Letter denying benefits included the SSA determination letter in a list of documents "received and reviewed" by CIGNA.[37] This is a clear misrepresentation of the record. The January 24 Letter says only that this document was "received," but says nothing about the review of this document. In fact, part of the January 24 Letter expressly states that "in regards to the Social Security award letter submitted, please note that your disability award from the [SSA] has no impact on your eligibility for Long Term Disability benefits."[38] This lends strong support to Trussel's assertion that CIGNA did not consider the SSA determination letter when making its own determination. This lack of consideration is an additional element that tends to shows a reasonable possibility that further discovery relating to conflict of interest will satisfy the good cause requirement.

## V. CONCLUSION

Trussel is not required at this stage to prove that a conflict actually existed—she is merely required to show that there is a reasonable chance that the requested discovery will satisfy the good cause requirement. Because Trussel has made this showing, the motion to compel discovery is granted. The Clerk of the Court is directed to close this motion [Document No. 12]. A conference is scheduled for April 16, 2008, at 4:00 p.m.

SO ORDERED.

---

36. *See* Pl. Mem. at 10 (citing to *Mikrut v. UNUM Life Ins. Co. of Am.*, No. 03 Civ. 1714, 2003 WL 23934145, *9, 2006 U.S. Dist. LEXIS 92265, at *27 (D.Conn. Dec. 20, 2006)) ("Although the findings of the SSA are not binding on Unum, its treatment of that evidence, namely using it to demand a return of funds but failing to factor it in its analysis of [Plaintiff's] claim, reveals that Unum's decision was actually affected by its conflict of interest.").

37. Def. Opp. at 11. CIGNA also asserts that it is not bound by the determination of the SSA. *See id.* However, Trussel never asserts that CIGNA is bound by the determination of the SSA, she simply argues that the failure to consider this determination is evidence of a conflict of interest. *See* Pl. Mem. at 10.

38. 1/24/06 Letter at 3.