Rajiv GARG, Plaintiff,

v.

WINTERTHUR LIFE, Defendant.

No. 07CV0510 (ADS)(AKT).

United States District Court,
E.D. New York.

Aug. 26, 2008.

Weiser & Associates, by Jaimee L. Nardiello, Esq., of Counsel, New York, NY, for Plaintiff.

Epstein Becker & Green, P.C., by Evan J. Spelfogel, Esq., of Counsel, New York, NY, for Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge:

## I. BACKGROUND

Rajiv Garg (the "plaintiff" or "Garg") was employed by Credit Suisse First Boston ("CSFB") as a supervisor of the Global Market Risk Management group from 1994 until 1999, when he claims that he became disabled and was no longer capable of performing his professional responsibilities. Winterthur Life (the "defendant" or "Winterthur"), is an insurance company organized and incorporated under the laws of Switzerland, with its principal place of business in Winterthur, Switzerland. The defendant acts as the plan administrator of certain occupational benefits provided to employees of the Credit Suisse Group, the parent company of Credit Suisse First Boston. The benefit plan at issue is known as the Pension Fund International of the Credit Suisse Group (the "PFI Plan"). During his employment, the plaintiff enrolled and participated in the PFI Plan, which provided for payment of approximately $112,500 per annum to Garg in the event he became disabled from his employment. The plaintiff contends that defendant wrongfully denied his claim for disability benefits.

On November 23, 2007, the Court issued a Decision and Order ("November 23 Decision and Order") denying the defendant's motion to dismiss for, among other things, lack of personal jurisdiction. Presently before the Court is the defendant's motion for an order certifying an interlocutory

appeal of the Court's determination the plaintiff made a *prima facie* showing of personal jurisdiction over the defendant in this action. In addition, the defendant moves for the Court's determination of the applicable standard and scope of review of Winterthur's decision to deny Garg benefits.

## II. DISCUSSION

### A. As to Defendant's Motion to Certify the Jurisdictional Issue for Interlocutory Appeal

In its November 23, 2007 Decision and Order, the Court explained that the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et. seq.*, provided for nationwide service of process and that where nationwide service of process is statutory, the Second Circuit looks to a defendant's minimum contacts with the United States as a whole in determining personal jurisdiction. This is often referred to as the "national contacts" test. (November 23 Decision and Order at 8 (citing *Aetna Life & Casualty v. Owen,* No. 04CV0817, 2004 WL 2381744, at *1 (S.D.N.Y. Oct. 13, 2004))). The Court noted that although the national contacts test is most frequently used to confer jurisdiction over United States residents who would otherwise not be subject to jurisdiction in the forum state, the test has also been used to confer jurisdiction over foreign nationals who establish sufficient contacts with the United States as a whole, rather than with any single state. (November 23 Decision and Order at 8 (citing *Central States, Southeast and Southwest Areas Pension Fund v. Phencorp. Reinsurance Co., Inc.,* 440 F.3d 870, 875 (7th Cir.2006) and *Pension Committee of the University of Montreal Pension Plan v. Banc of America Securities, LLC,* 05CV9016, 2006 WL 708470, at *3 (S.D.N.Y. March 20, 2006))).

The Court further noted the dearth of case law in this district analyzing jurisdiction over insurance or employee benefits plan administrators, who have undertaken administration of plans to New York State residents. (November 23 Decision and Order at 11). However, the Court relied on two cases from other districts, which analyzed the contacts necessary for personal jurisdiction over plan administrators. In *Peay v. BellSouth Medical Assistance Plan,* 205 F.3d 1206 (10th Cir.2000), the court held that an employee benefits plan administrator based in Alabama had sufficient contacts with the state of Utah where it pre-certified the insured's treatment at a Utah hospital and paid a Utah resident for part of the insured's care, noting that "[b]ecause defendants rendered benefits in Utah, they knew or should have known that a dispute over benefits could arise in Utah." *Id.* at 1213. Further, in *Sanders v. State Street Bank and Trust Co.,* 813 F.Supp. 529 (S.D.Tex.1993), the court found personal jurisdiction obtained over a savings plan administrator where it administered savings plans to over ten thousand individuals who resided, earned money contributed to their savings plan, and made decisions regarding their investments within the forum state. *Id.* at 532.

Taking, as it must, the plaintiff's factual allegations as true, the Court considered the following contacts allegations: (1) Winterthur contracted with Credit Suisse First Boston to provide insurance to the plaintiff, a resident of Nassau County, and other employees living in New York; (2) the PFI Plan is marketed towards Credit Suisse employees "who do not work in Switzerland, but who do work in New York;" (3) the defendant sent correspondence to and received correspondence from the plaintiff in Nassau County, New York; (4) the PFI policy was administered by the defendant through continuous contact with Nassau County; and (5) Wintert-

hur is a subsidiary of Credit Suisse Group, the parent company of Credit Suisse First Boston, which has offices in New York. (November 23 Decision and Order at 9–10). The Court found that these allegations established sufficient minimum contacts by Winterthur to make a *prima facie* showing of personal jurisdiction in this State.

The defendant contends that Winterthur's contacts in the present case do not rise to the level of contacts found in *Peay* and *Sanders.* Initially, the defendant points out that both *Peay* and *Sanders* dealt with domestic, rather than foreign corporations. In addition, the defendant contends that although *Peay* held that a plan administrator had sufficient contacts with the forum because it rendered benefits to the plaintiff in that forum, the only evidence in the record in the present case shows that the plaintiff instructed the defendant to pay his $200,000 pension termination benefit to an account in London, England. Further, the defendant distinguishes *Sanders,* where the court found the defendant's contacts with the Texas forum were sufficient because it administered a savings plan to over ten thousand individuals in that state and actions taken by the administrator would have a "real and important effect in Texas." *Sanders,* 813 F.Supp. at 532. Contrariwise, here, the defendant asserts that the record shows only that the Defendant administered the PFI Plan over one person residing in the United States, and over other employees not residing or working in Switzerland.

Further, the defendant contends that the factual allegations relied on by the Court in its prior Decision and Order were not supported by evidence in the record. First, Winterthur contends that there is no evidence in the record concerning whether any participants in the PFI Plan, other than the plaintiff, lived and worked in the United States. The defendant argues that while the plaintiff did assert in argument that "Pension Fund International of Credit Suisse Group, is specifically marketed towards Credit Suisse employees who do not work in Switzerland, but who do work in New York," such statement was not contained in his complaint or affidavit. Second, the defendant contends that the November 23 Decision and Order relies solely upon the fact that the defendant sent correspondence to the plaintiff at his home in Nassau County. The defendant argues that the mere mailing of letters has been held insufficient to support personal jurisdiction over a defendant.

■ Under 28 U.S.C. Section 1292(b), an interlocutory appeal may be certified when (1) the order appealed from involves a controlling question of law, (2) as to which there is substantial ground for difference of opinion, and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). "[O]nly exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Klinghoffer v. S.N.C. Achille Lauro,* 921 F.2d 21, 25 (2d Cir.1990). A district court is to "exercise great care in making § 1292(b) certification." *Westwood Pharmaceuticals, Inc. v. National Fuel Gas Distribution Corp.,* 964 F.2d 85, 89 (2d Cir.1992). Indeed, Section 1292(b) is not a "vehicle to provide early review of difficult rulings in hard cases." *German v. Federal Home Loan Mortgage Corp.,* 896 F.Supp. 1385, 1398 (S.D.N.Y.1995).

■ To establish that the interlocutory decision contains a controlling question of law, the defendant must show that (1) reversal of the court's order would terminate the action, or (2) determination of the issue on appeal would materially affect the outcome of the litigation. *See Klinghoffer,*

921 F.2d at 24 (rejecting the notion that in order to be a "controlling question of law," resolution of the issue on appeal must have precedential value for a large number of pending cases). Under this standard, the defendant asserts that reversal of the Court's earlier decision regarding personal jurisdiction would result in termination of the present action, and therefore, clearly involved a controlling question of law.

■ Further, Winterthur argues that there is substantial ground for difference of opinion in this case. It notes that the Court recognized a lack of controlling authority in this Circuit regarding the susceptibility of employee benefits plan administrators to personal jurisdiction based upon administrative activities. However, "the mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." *In re Flor v. BOT Financial Corp.*, 79 F.3d 281, 284 (2d Cir.1996). To determine whether a substantial ground for difference of opinion truly exists, a district court must analyze the strength of the arguments in opposition to the challenged ruling. *Id.*

■ Winterthur maintains that when boiled down to the most basic facts in this action, the correspondence sent to Garg at his home in Nassau County in furtherance of administration of the PFI Plan is insufficient to give rise to personal jurisdiction. The defendant cites several cases (also from outside this circuit) to support its position that the mailing of letters to Garg at his Nassau County residence are insufficient. However, the Court reiterates its position that the correspondence sent to Garg by Winterthur in furtherance of administration of the PFI Plan, coupled with the facts that Garg's disability pension credits were earned while he was a resident of Nassau County, and that any benefit payments, if received, would have been received in Nassau County, (Garg Aff. at ¶¶ 5–6, 9), are sufficient to establish a *prima facie* showing of personal jurisdiction under the reasoning of *Peay*. This is so even absent the plaintiff's allegations that other PFI Plan participants worked and resided in New York.

However, the Court need not reach the second factor because interlocutory appeal is inappropriate here as an immediate appeal is not likely to materially advance the termination of the litigation. The Second Circuit has stated that although "eventually [the Court] must determine whether the defendant in fact subjected itself to the court's jurisdiction" the plaintiff's burden to prove jurisdictional facts may occur "either at an evidentiary hearing or at trial." *Credit Lyonnais Securities (USA), Inc. v. Alcantara*, 183 F.3d 151, 153–54 (2d Cir. 1999); *see also Koehler v. Bank of Bermuda, Ltd.*, 101 F.3d 863, 865 (2d Cir.1996) ("While the plaintiff bears the ultimate burden of establishing jurisdiction over the defendant by a preponderance of evidence, until discovery takes place, a plaintiff is required only to make a *prima facie* showing by pleadings and affidavits that jurisdiction exists."). The Court's November 23 Decision and Order found that the plaintiff made a *prima facie* showing of jurisdiction, nothing more. In addition, the Court notes that the defendant's initial 12(b)(2) motion papers did not request an evidentiary hearing of the jurisdictional issue.

In *Koehler*, the Second Circuit was asked to review a district court's initial determination of a *prima facie* showing of personal jurisdiction, and concluded that based upon the fact intensive inquiry that would be necessary to determine personal jurisdiction, any appeal from such determination would be premature. *Koehler*, 101 F.3d at 866. The Circuit Court observed that "[e]ven if we affirm the district court,

that court will still need to determine whether [the plaintiff] can meet his ultimate burden of showing personal jurisdiction over [the defendant] by a preponderance of the evidence at a later stage of the trial proceedings." *Id.* at 866. The Court determined that "certification of the personal jurisdiction question at this initial stage of the proceeding in the absence of discovery and a district court hearing to determine the jurisdictional question by a preponderance of the evidence was improvidently granted." *Id.* at 867; *see also In re Enron Corp.*, No. 01CV6034, 2008 WL 281972, at *6 n. 5 (S.D.N.Y. Jan. 25, 2008) ("Since a determination whether the requisite jurisdiction exists may rest on matters disclosed in discovery, appellate review, at this juncture, would be premature and would not materially advance the resolution of these matters.").

Here, any question as to the sufficiency of Winterthur's administrative activities for the purpose of exercising personal jurisdiction could well "disappear in light of a complete and final record." *Koehler*, 101 F.3d at 864. Having found that the plaintiff made a *prima facie* showing of personal jurisdiction sufficient to survive a motion to dismiss, the plaintiff is entitled to discovery before the Court decides the ultimate jurisdictional question. Accordingly, the defendant's motion to certify the jurisdictional question for interlocutory appeal is denied.

**B. As to the Defendant's Motion for the Court's Determination of the Scope and Standard of Review**

Winterthur moves the Court for a determination of the scope and standard of review to be applied to its decision denying the plaintiff disability benefits. It contends that because an undated PFI Plan document, entitled "General Conditions" unambiguously gave it discretionary authority to determine eligibility for benefits, its decision can be reviewed only on an "arbitrary and capricious" basis, rather than *de novo*. Further, the defendant asserts that the Court may consider only the administrative record that was before the plan administrator at the time of its decision and discovery in this action should be limited to that administrative record.

In response, the plaintiff contends that the defendant cannot rely upon the "General Conditions" document because it was not contained within or annexed to the plan that was in effect at the time the plaintiff became disabled. In addition, Garg contends that he was not provided with the document prior to becoming disabled, but only first learned of it when a copy was provided to his counsel during the course of this litigation. In addition, the plaintiff contends that the language relied on by the defendant does not unequivocally grant it discretionary authority and any ambiguity must be resolved against the insurer.

In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court held that benefit eligibility determinations are "to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone*, 489 U.S. at 115, 109 S.Ct. 948. Following the Court's determination in *Firestone*, the Second Circuit has stated that "where a plan does confer discretion upon the administrator to determine eligibility or interpret the terms of the plan, the determinations of the administrator are reviewed under an abuse of discretion standard." *Kosakow v. New Rochelle Radiology Associates, P.C.*, 274 F.3d 706, 738 (2d Cir.2001). Here, the defendant presents a "General Conditions" document, which provides that "Winterthur Life will pay the insured benefit as soon as it has

satisfied itself of the validity for claims based on documents required." (Def. Exh. A, No. D 0266, *General Conditions* at ¶ 11.1).

■ As an initial matter, "[t]he plan administrator bears the burden of proving that the deferential standard of review applies." *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir.2002); *see also Nichols v. Prudential Ins. Co. of America*, 406 F.3d 98, 109 (2d Cir.2005). Here, the plaintiff disputes whether the "General Conditions" document as presented by the defendant was contained within the plan that was in effect at the time the plaintiff allegedly became disabled. The Court finds that the defendant has not met its threshold burden of establishing that the terms of the PFI Plan in place at the time the plaintiff's disability claim arose included the "General Conditions" as presented.

Simply put, the defendant has failed to meet its burden because the document it offers to show discretion lacks an appropriate foundation. Offering a single undated document out of context and summarily stating that the document was produced as part of the administrative record during discovery, without more, is insufficient to establish that the document was in fact part of the PFI Plan as of the date the plaintiff claimed a disability. As the appropriate foundation for the critical PFI Plan documents has not been established, the Court declines, at this time, to decide the standard of review that will ultimately be applied to the defendant's denial of benefits. *See Sheehan v. Metropolitan Life Ins. Co.*, No. 01CV9182, 2002 WL 1424592, at *3 (S.D.N.Y. June 28, 2002) (holding that where the defendant "has yet to uncover complete copies of the relevant plan documents," the court had to proceed on the assumption that the *de novo* standard of review would apply).

On the electronic filing entry of this motion, the defendant noted a *"Motion for Hearing Seeking the Court's Determination of the Applicable Standard and Scope of Review."* However, no request for a hearing was made in the defendant's Notice of Motion or its other moving papers. A determination of the applicable standard of review need not be made prior to dispositive motion practice or trial, when all relevant PFI Plan documents may be properly offered into evidence. Accordingly, the defendant's motion to determine the standard of review is denied without prejudice and its request for a hearing on this issue is denied.

The defendant also contends that even if the arbitrary and capricious standard of review does not apply, the scope of review in this case should be confined to the administrative record because good cause to consider additional evidence does not exist. On October 24, 2007, United States Magistrate Judge A. Kathleen Tomlinson entered an order staying discovery in this action pending determination by this Court of the scope of review. The defendant argues that it had already produced the entire administrative record and should not be required to produce anything further. The record is unclear, however, as to what extent discovery of information material to a determination of a potential conflict of interest on the part of Winterthur has taken place. As discussed below, if discovery on this issue has not yet occurred, the plaintiff is entitled to seek such discovery.

■ Even where the *de novo* standard of review applies, "the decision whether to admit additional evidence is one which is discretionary with the district court, but which discretion ought not to be exercised in the absence of good cause." *DeFelice v. American Intern. Life Assur. Co. of New York*, 112 F.3d 61, 66 (2d

Cir.1997). "A demonstrated conflict of interest in the administrative reviewing body is an example of 'good cause' warranting the introduction of additional evidence." *Id.* at 67. In *Locher v. Unum Life Ins. Co. of America*, 389 F.3d 288 (2d Cir.2004), the Second Circuit stated that simply because an administrator and insurer are related entities, and therefore conflicted, does not mean that good cause to consider additional information exists *per se. Locher*, 389 F.3d 288, 295. Instead, the court stated that something more, such as flawed procedures employed in arriving at the claim determination, is required to give rise to a finding of good cause. *Id.*

The burden of proof to establish good cause is on the plaintiff seeking to present evidence outside of the administrative record. *Trussel v. Cigna Life Ins. Co. of New York*, 552 F.Supp.2d 387, 390 (S.D.N.Y.2008). The plaintiff states that good cause does in fact exist because of certain conflicts of interest on the part of the administrative reviewing body, including: (1) that the defendant acted as both the plan administrator and the insurer responsible for making payments; (2) that the record does not contain any written procedures followed by Winterthur in determining claims made under the PFI plan and; (3) that Winterthur failed to engage in a substantive evaluation of the plaintiff's claim and instead relied on the decision of another "local plan" in denying the plaintiff benefits.

Defendant does not expressly confirm or deny whether it acted as both insurer and payor under the PFI Plan. In addition, the plaintiff presents an e-mail correspondence ostensibly exchanged by Winterthur's agents, which tends to show that it may not have engaged in its own analysis of Garg's claim, but instead relied on the disability decision of another "local plan" entity. (Pl. Exh. C). Accordingly, the plaintiff states that discovery should proceed outside of the administrative record. However, the plaintiff fails to specify exactly what discovery it seeks.

At this point, the Court finds that the plaintiff has shown a reasonable chance that additional discovery may lead to information that will satisfy the good cause requirement. *See Trussel*, 552 F.Supp.2d at 390. Thus, the Court finds that discovery in this action may proceed outside of the administrative record, in order to allow the court to determine the appropriate standard of review. *Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 174 (2d Cir.2001) (finding that the plaintiff was entitled to seek discovery to determine whether the defendant's denial of benefits was tainted by a conflict of interest); *see also Farley v. Arkansas Blue Cross & Blue Shield*, 147 F.3d 774, 776 n. 4 (8th Cir.1998) (finding that "conducting limited discovery for the purpose of determining the appropriate standard of review does not run afoul of the general prohibition on admitting evidence outside the administrative record for the purpose of determining benefits"). The proper subject for additional discovery will be whether Winterthur had a conflict of interest when it denied Garg's request for disability benefits, and whether that conflict influenced its decision. *See Sheehan*, 2002 WL 1424592, at *4.

## III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED,** that the defendant's motion to certify an interlocutory appeal of the Court's November 23, 2007 Decision and Order is denied; and it is further

**ORDERED,** that the defendant's motion seeking the Court's determination the applicable standard of review is denied, without prejudice, and it is further

**ORDERED,** that the defendant's motion seeking the Court's determination of the applicable scope of review is denied, without prejudice, and it is further

**ORDERED,** that discovery may proceed outside of the administrative record to topics relevant to the question of whether or not Winterthur had a conflict of interest when it denied Garg's claim and whether that conflict influenced its decision.

**SO ORDERED.**