**Bernadette M. DURHAM, Plaintiff,**

v.

**The PRUDENTIAL INSURANCE COMPANY OF AMERICA, KPMG Medical Plan, and KPMG Life Insurance Plan, Defendants.**

**No. 12 Civ. 1890(WHP).**

United States District Court, S.D. New York.

Aug. 28, 2012.

Scott Madison Riemer, Riemer & Associates, LLC, New York, NY, for Plaintiff.

Michelle J. D'Arcambal, D'Arcambal, & Ousley, L.L.P., New York, NY, for Defendant Prudential.

Elizabeth Poppe Williams, Sidley Austin LLP, New York, NY, for KPMG Defendants.

## MEMORANDUM & ORDER

WILLIAM H. PAULEY III, District Judge.

Plaintiff Bernadette Durham ("Durham") brings this action pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"), seeking to recover disability, medical, and life insurance benefits allegedly due from employee benefit plans sponsored by her former employer KPMG. Defendant Prudential Insurance Company of America ("Prudential") is the claims administrator of the disability plan. Prudential moves for an order (1) declaring that the arbitrary and capricious standard of review applies to Prudential's decisions on Durham's claim for long term disability benefits, and (2) limiting Durham's discovery to the administrative record. For the following reasons, Prudential's motion is denied.

## BACKGROUND

Durham worked for KPMG as a Director of Industries and Marketing. (Complaint dated Mar. 9, 2012 ("Compl.") ¶ 10.) She participated in KPMG's short term and long term disability plan (the "Plan"). (Compl. ¶ 4.) Prudential, as claims administrator, was responsible both for evaluating claims and paying benefits to eligible claimants. (*See* Compl. ¶¶ 6, 68.)

The Plan consists of three documents: (1) a Group Insurance Contract (the "Group Contract"), (2) a Certificate of Coverage (the "Group Insurance Certificate"), and (3) Amendments to the Group Contract. (*See* Declaration of Colleen Martin, dated July 27, 2012 ("Martin Decl."), Exs. A–C.) Prudential also provided plan participants with a Summary Plan Description ("SPD"), as ERISA requires. *See* 29 U.S.C. § 1022(a). The SPD expressly provides that it "is not part of the Group Insurance Certificate." (Martin Decl. Ex D: Summary Plan Description (the "SPD") at PRU2174.)

In March 2009, Durham—who allegedly suffers from a wide variety of ailments, including Lyme Disease (*see* Compl. ¶ 14)—filed a claim for short term disability and long term disability benefits under the Plan. (Compl. ¶ 13.) Prudential paid Durham short term disability benefits but denied her claim for long term disability benefits. (Compl. ¶¶ 17, 24.) Durham, represented by counsel, appealed Prudential's decision through internal channels. Prudential denied her two appeals. (*See* Compl. ¶¶ 26, 31, 36, 43.) In March 2012, Durham filed this action, challenging Prudential's denial of her claim.

## DISCUSSION

### I. *Standard of Review*

#### A. *Legal Standard*

■ Courts review the denial of ERISA benefits *de novo* unless the plan gives the administrator discretionary authority to determine eligibility for benefits or to construe plan terms. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). If the plan gives the administrator discretion, arbitrary and capricious review applies. *Firestone,* 489 U.S. at 115, 109 S.Ct. 948. "'A reservation of discretion need not ac-

tually use the words 'discretion' or 'deference' to be effective, but it must be clear.'" *Krauss v. Oxford Health Plans, Inc.,* 517 F.3d 614, 622 (2d Cir.2008) (quoting *Nichols v. Prudential Ins. Co. of Am.,* 406 F.3d 98, 108 (2d Cir.2005)). "'In general, language that establishes an objective standard does not reserve discretion, while language that establishes a subjective standard does.'" *Krauss,* 517 F.3d at 622 (quoting *Nichols,* 406 F.3d at 108). The plan administrator bears the burden of proving that it has discretion, and ambiguities are construed in favor of the plan beneficiary. *See Krauss,* 517 F.3d at 622. "Since clear language can be readily drafted and included in policies ... courts should ... decline to search in semantic swamps for arguable grants of discretion." *Kinstler v. First Reliance Standard Life Ins. Co.,* 181 F.3d 243, 252 (2d Cir.1999).

### B. *Plan Language*

■ Prudential argues that the Plan confers discretion because the Group Insurance Certificate provides, "You are disabled *when Prudential determines* that; you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury; and you have a 20% or more loss in your indexed monthly earnings due to that sickness or injury." (Martin Decl., Ex C: KPMG LLP Staff Employees Short Term Disability Coverage—Long Term Disability Coverage (the "Group Insurance Certificate"), at PRU2145 (emphasis added).) The Group Insurance Certificate also provides, "After 36 months of payments, you are disabled *when Prudential determines* that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience," (Group Insurance Certificate at PRU2145 (emphasis added).) The

Group Insurance Certificate provides the following definitions:

> Material and substantial duties mean duties that: are normally required for the performance of your regular occupation; and cannot be reasonably omitted or modified, except that if you are required to work on average in excess of 40 hours per week, Prudential will consider you able to perform that requirement if you are working or have the capacity to work 40 hours per week. Regular occupation means the occupation you are routinely performing when your disability begins. Prudential will look at your occupation as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location.

(Group Insurance Certificate at PRU2145.)

The Second Circuit has held that similar language in another Prudential plan did not confer discretion. *See Nichols*, 406 F.3d at 108–09. ("The phrase 'when Prudential determines' ... ultimately lacks sufficient indicia of subjectivity as required by *Kinstler*."). The Court of Appeals explained, "The language gives Prudential the power to make the determination, but the list of specific conditions requires that such power be exercised only in accordance with objective standards." *Nichols*, 406 F.3d at 109.

Prudential argues that *Nichols* is distinguishable, relying on *Mood v. Prudential Insurance Co. of America*, 379 F.Supp.2d 267 (E.D.N.Y.2005). The plan in *Mood* was nearly identical to the plan here, and the court suggested, without deciding, that the arbitrary and capricious standard of review was appropriate. *Mood*, 379 F.Supp.2d at 280. In a chart, the *Mood* court compared the language of the plan under consideration to the plan in *Nichols* and attempted to distinguish them. *See Mood*, 379 F.Supp.2d at 275–80. Pruden-

tial argues that those distinctions apply equally here. But the distinctions drawn in *Mood* are so fine as to amount to "search[ing] semantic swamps for arguable grants of discretion." *Kinstler*, 181 F.3d at 252. Indeed, both the plan in *Nichols* and the Plan here permit Prudential to determine "the material and substantial duties" of a beneficiary's "occupation" or "regular occupation;" permit Prudential to determine occupations for which a beneficiary is "reasonably fitted by education, training or experience;" and provide an objective measure of economic loss for determining whether a beneficiary is disabled. *See Mood*, 379 F.Supp.2d at 275–79 (reproducing the language of the *Nichols* plan). Accordingly, the result in *Nichols* controls here.

Prudential points out that the Second Circuit recently found a grant of discretion through the word "determine." *See Krauss*, 517 F.3d at 623. But in *Krauss*, the plan gave the administrator the power to determine a "reasonable charge," and "the only source that might bear on what is reasonable is 'data compiled by [HIAA] and other recognized [but unspecified] sources.'" *Krauss*, 517 F.3d at 623 (alterations in original) (quoting benefit plan). The language in *Krauss* creates a more subjective standard than the language in the Group Insurance Certificate. *See Laub v. Aetna Life Ins. Co.*, 549 F.Supp.2d 571, 575 (S.D.N.Y.2008) (describing language materially similar to the Group Insurance Certificate as "quintessentially objective"). Moreover, the plan in *Krauss* provided that the administrator "may adopt reasonable policies, procedures, rules, and interpretations to promote the orderly and efficient administration of this Certificate." *Krauss*, 517 F.3d at 622. Prudential identifies no similar language here.

And while the Plan provides that Prudential may stop paying benefits when a beneficiary fails "to submit proof of continuing disability satisfactory to Prudential," the Second Circuit observed,

> [T]he phrase 'proof satisfactory to [the decision-maker]' is an inadequate way to convey the idea that a plan administrator has discretion. Every plan that is administered requires submission of proof that will 'satisfy' the administrator. No plan provides benefits when the administrator thinks that benefits should not be paid! Thus, saying that proof must be satisfactory 'to the administrator' merely states the obvious point that the administrator is the decision-maker, at least in the first instance.

*Kinstler*, 181 F.3d at 252 (second alteration in original); *accord Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407, 414 (3d Cir.2011) (holding plan language requiring "proof of loss satisfactory to Us [the administrator]" insufficient to confer discretion); *Diaz v. Prudential Ins. Co. of Am.*, 424 F.3d 635, 639–40 (7th Cir.2005) (same). Accordingly, the Plan's language does not confer discretion on Prudential.

### C. *SPD*

■ Prudential argues that the SPD should be considered in determining the standard of review. The SPD's language is clear about Prudential's discretion. (*See* SPD at PRU2176 ("[Prudential] has the sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits. The decision of the Claims Administrator shall not be overturned unless arbitrary and capricious.").) However, the Supreme Court recently held that "statutorily required plan summaries (or summaries of plan modifications)"—like the SPD—may not be enforced as if they are the terms of the plan itself. *CIGNA Corp. v. Amara*, — U.S. —, 131 S.Ct. 1866, 1877, 179 L.Ed.2d 843 (2011).

■ Prudential suggests that the SPD nonetheless should be considered part of the Plan because it is contained in the same bound booklet as the Group Insurance Certificate. "However, an insurer is not entitled to deferential review merely because it claims the SPD is integrated into the Plan. Rather, the insurer must demonstrate that the SPD is part of the Plan, for example, by the SPD clearly stating on its face that it is part of the Plan. A contrary decision would undermine *Amara*." *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1131 (10th Cir.2011). Here, the SPD expressly provides that it is *not* part of the Group Insurance Certificate.

Prudential also argues that *Amara* simply stands for the proposition that terms in an SPD are unenforceable when they conflict with plan documents. *See Amara*, 131 S.Ct. at 1877 ("[ERISA § 502(a)(1)(B)] allows a court to look outside the plan's written language in deciding what those terms are, *i.e.*, what the language means."); *see also Eugene S.*, 663 F.3d at 1131 (*Amara* held either "(1) the terms of the SPD are not enforceable when they conflict with governing plan documents, or (2) the SPD cannot create terms that are not also authorized by, or reflected in, governing plan documents"). But because the Plan does not confer discretion on Prudential, the SPD conflicts with the Plan, and its attempted grant of discretion is therefore ineffective.

The post-*Amara* cases Prudential cites are inapposite. In one, the plan itself did not appear to be before the court, and the plaintiff did not contend that there was a conflict between the SPD and the plan. *See Langlois v. Metro. Life Ins. Co.*, 833 F.Supp.2d 1182, 1185–86 (N.D.Cal.2011) ("Plaintiff has not argued that there is any

conflict between the language in the SPD conferring discretion on the plan administrator and the terms of the Plan itself."). In the others, the plans clearly conferred discretion on the administrators. *See Pettaway v. Teachers Ins. & Annuity Ass'n of Am.*, 644 F.3d 427, 434–35 (D.C.Cir.2011) (noting, without citation to *Amara*, that the plan document gives the administrator the " 'absolute power, authority and discretion to administer the [Academy] Plan' " (alteration in original)); *Bonanno v. Blue Cross & Blue Shield of Mass., Inc.*, No. 10–11322–DJC, 2011 WL 4899902, at *7 (D.Mass. Oct. 14, 2011) ("Moreover, the Plan Document explicitly provides that: 'the Claims Administrator . . . shall have absolute discretion to construe and interpret any and all provisions of the Plan and the Benefit Programs . . . .' " (alterations in original)).

Prudential also relies on *Faber v. Metropolitan Life Insurance Co.*, 648 F.3d 98 (2d Cir.2011), a post-*Amara* case citing a summary plan description in explaining the terms of a plan. But *Faber* does not mention *Amara*, and the Second Circuit expressly found that the plaintiffs in that case waived any argument that "the SPDs misrepresented or [were] inconsistent with the underlying Plans" because they failed to raise the argument in the district court or in their appellate briefs and in fact relied on the SPDs to support their position on the merits. *Faber*, 648 F.3d at 107 n. 5. Accordingly, *Faber* does not support Prudential's position.

■ To allow the SPD to confer discretion when the Plan does not would empower plan administrators to set plan terms. But that power is reserved for plan sponsors. *See Amara*, 131 S.Ct. at 1877. And ERISA does not "intend[ ] to mix the responsibilities [of plan sponsors and administrators] by giving the administrator the power to set plan terms indirectly by in-

cluding them in the summary plan descriptions." *Amara*, 131 S.Ct. at 1877. Under these circumstances, the SPD cannot confer discretion. Accordingly, the appropriate standard of review is *de novo*.

## II. *Discovery*

■ In reviewing an ERISA administrator's benefits decision *de novo*, the district court is limited to the administrative record, "unless the district court finds good cause to consider additional evidence." *DeFelice v. Am. Int'l Life Assurance Co. of N.Y.*, 112 F.3d 61, 66 (2d Cir.1997). "A demonstrated conflict of interest in the administrative reviewing body is an example of 'good cause' warranting the introduction of additional evidence." *DeFelice*, 112 F.3d at 67. An entity—like Prudential here—that performs the "dual role[s]" of evaluating claims for benefits and paying benefits operates under a conflict of interest. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108, 112, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008). However, such a structural conflict of interest does not *per se* constitute good cause to consider additional evidence. *Locher v. Unum Life Ins. Co. of Am.*, 389 F.3d 288, 294–96 (2d Cir.2004). Rather, "it can rise to the level of 'good cause' when bolstered by specific allegations." *Biomed Pharm., Inc. v. Oxford Health Plans (N.Y.), Inc.*, 831 F.Supp.2d 651, 658 (S.D.N.Y.2011). For example, the Second Circuit has found good cause where there were "procedural problems with the plan administrator's appeals process." *Locher*, 389 F.3d at 296 (finding good cause where a conflicted administrator did not have written procedures for claims review); *DeFelice*, 112 F.3d at 66 (finding good cause where conflicted administrator had no established criteria for determining claims appeals and a practice of destroying records immediately after hearings).

■ Because of the limitations on admissible evidence, discovery in ERISA cases is also generally limited to the administrative record. *See Lane v. The Hartford,* No. 06 Civ. 3931(DC), 2006 WL 3292463, at *2 (S.D.N.Y. Nov. 14, 2006). However, the standard for permitting discovery outside the administrative record is "far less stringent" than the "good cause" standard for actually considering the outside evidence. *Joyner v. Continental Cas. Co.,* 837 F.Supp.2d 233, 240 (S.D.N.Y. 2011). Accordingly, courts in this district generally require an ERISA plaintiff seeking additional discovery to show only a "reasonable chance that the requested discovery will satisfy the good cause requirement." *E.g., Baird v. Prudential Ins. Co. of Am.,* No. 09 Civ. 7898(PGG), 2010 WL 3743839, at *9 (S.D.N.Y. Sept. 24, 2010); *Trussel v. Cigna Life Ins. Co.,* 552 F.Supp.2d 387, 390 (S.D.N.Y.2008). A plaintiff may satisfy this requirement by alleging facts suggesting that the administrator's conflict may have affected its decision on the plaintiff's claim. *See, e.g., Baird,* 2010 WL 3743839, at *7–8; *Trussel,* 552 F.Supp.2d at 391–93.

■ Here, Durham contends that she is entitled to discovery outside the administrative record because (1) Prudential failed to conduct independent neuropsychological testing of Durham even though its own medical consultant believed such testing was necessary, (2) the same Prudential employee evaluated both of Durham's administrative appeals, (3) Prudential failed to consider the Social Security Administration's ("SSA") determination that Durham was disabled, (4) Prudential's medical consultants serve only insurance companies, and (5) Prudential's claims personnel are given access to Prudential's financial reserve information and are trained that the most important goal is to "Increase Profitability." (*See* Compl. ¶¶ 44, 45, 47, 49, 56, 68–76, 77–80.)

Taken together, these allegations are sufficiently specific to suggest that Prudential's conflict may have affected its decision on Durham's claim. Thus, some additional discovery is warranted on those topics. *See Trussel* 552 F.Supp.2d at 393 (administrator's failure to consider SSA's determination, among other factors, warranted additional discovery); *Hogan–Cross v. Metro. Life Ins. Co.,* 568 F.Supp.2d 410, 415 (S.D.N.Y.2008) (allowing discovery about medical consultants' relationships with insurer); *Samedy v. First UNUM Life Ins. Co. of Am.,* No. 05 Civ. 1431(CBA)(KAM), 2006 WL 624889, at *2 (E.D.N.Y. Mar. 10, 2006) (allowing discovery where employee of administrator stated she was pressured to deny claims). And while Prudential contends that Durham's allegations are belied by the administrative record, the portions of the record Prudential cites do not clearly show the absence of a reasonable chance that Prudential's conflict affected its decision. For example, Prudential contends that it considered the SSA's findings in its decision denying Durham's second appeal. But the only mention of the SSA's findings is in a paragraph listing the materials Durham submitted to Prudential for review. (*See* Affirmation of Scott M. Riemer dated Aug. 15, 2012, Ex. 3, at PRU2017.) The decision "says nothing about the review of this document." *Trussel,* 552 F.Supp.2d at 393. Accordingly, Prudential's motion to limit discovery to the administrative record is denied.

However, in light of the "the significant ERISA policy interests of minimizing costs of claim disputes and ensuring prompt claims-resolution procedures," *Locher,* 389 F.3d at 295, this Court will limit discovery to reasonable document requests and a deposition of a Prudential representative

pursuant to Federal Rule of Civil Procedure 30(b)(6). *See Joyner*, 837 F.Supp.2d at 243 (similarly limiting discovery). This Court notes that Durham's document requests, as represented in Prudential's brief (*see* Prudential's Mem. of Law, dated July 27, 2012, at 16), appear unnecessarily broad. This Court therefore urges Durham to pare her document requests to documents most likely to be directly relevant to Prudential's decision on her claim.

### CONCLUSION

For the foregoing reasons, Prudential's motion is denied. The Clerk of the Court is directed to terminate the motion pending at ECF No. 15.

SO ORDERED.